S. FRANK HARRELL - SBN 133437
sharrell@lynberg.com
G. CRAIG SMITH – SBN 265676
CSMITH@LYNBERG.COM
**LYNBERG & WATKINS**
1100 W. Town & Country Road, Suite #1450
Orange, California 92868
(714) 937-1010 Telephone
(714) 937-1003 Facsimile

Attorneys for Defendant,
YVETTE BARBARI, RN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN R. PORIO,<br><br>Plaintiff,<br><br>vs.<br><br>YVETTE BARBARI, RN<br><br>Defendants. | CASE NO. 8:22-cv-812 RGK (ADSx)<br><br>*Assigned for All Purposes to:*<br>*Hon. R. Gary Klausner – Courtroom 850*<br><br>**DEFENDANT YVETTE BARBARI, RN'S REPLY TO PLAINTIFF'S OPPOSITION TO RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Date:         January 21, 2025<br>Time:        9:00 a.m.<br>Ctrm.:       850<br><br>*Trial Date:        January 21, 2025*<br>*Complaint Filed: April 13, 2022* |

1
**DEFENDANT YVETTE BARBARI, RN'S REPLY TO PLAINTIFF'S OPPOSITION TO RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES...............................................3

I.   PRELIMINARY STATEMENT ......................................................................3

II.  FACTUAL BACKGROUND ...........................................................................3

III. PLAINTIFF FAILS TO CITE ON-POINT CLEARLY ESTABLISHED FOURTEENTH AMENDMENT LAW ..............................5

IV.  PLAINTIFF'S LEGAL CITATIONS ARE DISTINGUISHABLE .................9

V.   REASONABLE MISTAKES ARE PROTECTED BY QUALIFIED IMMUNITY ......................................................................................................11

VI.  THE COURT SHOULD NOT CERTIFY UNDER CHUMAN V. WRIGHT THAT AN APPEAL FROM DENIAL OF THIS MOTION WOULD BE FRIVOLOUS ............................**Error! Bookmark not defined.**

VII. CONCLUSION .................................................................................................12

DECLARATION OF S. FRANK HARRELL ............................................................13

CERTIFICATE OF COMPLIANCE..........................................................................15

**DEFENDANT YVETTE BARBARI, RN'S REPLY TO PLAINTIFF'S OPPOSITION TO RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Nurse Yvette Barbari has brought her Fed. R. Civ. P. 50(b) Motion on the grounds that the material, undisputed trial evidence entitles her to qualified immunity. Nothing in Plaintiff Shawn Porio's Opposition Memorandum provides any good reason to think otherwise.

## II. FACTUAL BACKGROUND

At the outset, the evidence established that Porio communicated with Nurse Barbari during his triage screening. Plaintiff provided information to Barbari that only he would have known. For example, during the intake screening, Nurse Barbari asked Plaintiff if he wore glasses to which he responded "yes". (RT 12/10 – Barbari Testimony, 169:21-170:1; 170:8-14; Harrell Decl. Ex. "A"). At trial, Plaintiff candidly admitted he wore glasses at the time of the incident but was ***not*** wearing glasses at the time of the intake screening. (Id. at 170:2-7; RT 12/11 – Porio Testimony, 305:10-12; Harrell Decl. Ex. "B"). If Plaintiff had not communicated this information to Nurse Barbari she plainly would not have been able to accurately record this fact. RT 12/10 – Barbari Testimony, 170:18-20; Harrell Decl. Ex. "A"). Nurse Barbari also asked Plaintiff if he was sexually active, to which Plaintiff communicated he was not. (RT 12/10 – Barbari Testimony, 170:21-171:17; Sipsey Decl. Ex. "A"; Trial Ex. 83A, 7; Harrell Decl. Ex. "E"). Here too, Plaintiff confirmed at trial that he was ***not*** sexually active at the time of the incident. (RT 12/11 – Porio Testimony, 305:16-17; Harrell Decl. Ex. "B"). Nurse Barbari could not have known this private information had Porio not told her what to accurately record. (RT 12/10 – Barbari Testimony, 171:18-20; Harrell Decl. Ex. "A"). In short, no reasonable juror could fairly conclude that Plaintiff was not communicating with Nurse Barbari at triage. See, Dobbs v. City of Los Angeles, 41 Cal. App. 5th 159,

3

**DEFENDANT YVETTE BARBARI, RN'S REPLY TO PLAINTIFF'S OPPOSITION TO RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

162162 (2019)(the law incorporates common sense.").

Nurse Barbari testified at trial that she conducted an independent assessment of Plaintiff during the triage intake screening, which also included completing the receiving screening form and comprehensive detox screening form. (RT 12/10 – Barbari Testimony, 141:7-13; Harrell Decl. Ex. "A"). Nurse Barbari came to her own conclusion that Plaintiff was under the influence of alcohol by asking Plaintiff screening questions, observing Plaintiff and reviewing the paperwork provided to her by Officer Flores. (RT 12/10 – Barbari Testimony, 190:12-192:17; Harrell Decl. Ex. "A").

Plaintiff also communicated to Nurse Barbari that he did not have any risk factors for stroke. (RT 12/10 – Barbari Testimony, 174:18-178:25; Harrell Decl. Ex. "A"; Trial Ex. 83A, 5, 7-8, 11-13; Harrell Decl. Ex. "E"). And, for good measure, Plaintiff also advised Nurse Barbari that he did not have any symptoms unique to stroke. (RT 12/10 – Barbari Testimony, 179:1-185:25; Harrell Decl. Ex. "A"; Trial Ex. 83A, 4, 16-17; Harrell Decl. Ex. "E"). Plaintiff's unsteady gait and unsteady communication symptoms were consistent with symptoms of intoxication, a non-debatable point to which Plaintiff's expert witness, Dr. Homer Venters, eventually agreed. (RT 12/11 – Venters Testimony, 276:22-277:1; 278:6-9; Harrell Decl. Ex. "C").

Dr. Venters admitted that it is ***not*** always medically advisable for a person who is under the influence of alcohol to see a doctor for treatment. (RT 12/11 – Venters Testimony, 280:14-18; Harrell Decl. Ex. "C"). Dr. Venters also testified that with the information Nurse Barbari had, including the fact that Plaintiff was not in a risk group for stroke and did not present with symptoms of a stroke, that it would ***not*** suggest to a reasonably well trained nurse that there was a high degree of risk Plaintiff would suffer a stroke if he did not receive a doctor's care at the time of the intake screening. (RT 12/11 – Venters Testimony, 273:8-274:3; Harrell Decl.

4
**DEFENDANT YVETTE BARBARI, RN'S REPLY TO PLAINTIFF'S OPPOSITION TO RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

1  Ex. "C").

2      For his part, Plaintiff claimed to have no memory of the incident – and the
3  video tape of the 12-minute triage encounter amounted to his testimony as to his
4  physical condition. Tellingly, Plaintiff's counsel never even claimed it showed the
5  type of one-sided paralysis or unconsciousness commonly associated with stroke.
6  Accordingly, Nurse Barbari had no medical information that suggested Plaintiff
7  faced a high degree of risk of suffering from a stroke during the intake screening –
8  and Plaintiff has cited no material trial evidence to the contrary. (RT 12/10 – Barbari
9  Testimony, 185:12-25; Harrell Decl. Ex. "A").

10      Dr. Venkatasubramanian never testified that Plaintiff's presentation during
11  the intake screening was consistent with someone suffering a stroke (rather than
12  intoxication). She merely opined, in word salad fashion, that Porio was not in his
13  "baseline" medical state, after reviewing ***all*** videos of Plaintiff (including those
14  rightly excluded from evidence by Motion in Limine No. 1). (RT 12/10 –
15  Venkatasubramanian Testimony, 106:7-11, 107:22-108:1; Harrell Decl. Ex. "D").
16  Based on all of these videos, and not ***just*** the triage video, Dr. Venkatasubramanian
17  testified that it is very clear "as a physician" that Plaintiff was "not his normal self,
18  that he was unstable, he was off balance, he was listing off to one side. He was not
19  fully coherent. He was not understanding and expressing his thoughts accurately. . .
20  ." (RT 12/10 – Venkatasubramanian Testimony, 106:7-11, 106:18-107:4; Harrell
21  Decl. Ex. "D"). However, Dr. Venkatasubramanian never claimed that these
22  symptoms were not consistent with intoxication.

### III.     PLAINTIFF FAILS TO CITE ON-POINT CLEARLY ESTABLISHED FOURTEENTH AMENDMENT LAW

25      Plaintiff has not cited any law to refute Nurse Barbari's position that
26  symptoms of intoxication do not present an obvious, serious medical need that
27  requires referral to a provider. (See Opp'n at 6:10-11). Indeed, the law is to the

28

contrary. See, e.g., Palacios v. City of Oakland, 970 F. Supp. 732, 742 (N.D. Cal. 1997), aff'd, 152 F.3d 928 (9th Cir. 1998)(granting qualified immunity: "Plaintiffs assert that Officer Hughes should have sent Palacios to the hospital after he became unconscious. . .. The evidence is undisputed that at the time Palacios lost consciousness, he was intoxicated, which could have accounted in part for his failure to regain consciousness immediately."); Winger v. City of Garden Grove, 690 F. App'x 561, 563 (9th Cir. 2017)(no medical liability where arresting officers and jailers confuse "intoxication" for what actually happened to the arrestee (a stroke) and do not hospitalize her – "Winger's behavior was erratic but in a way that was consistent with intoxication."); Barton v. Taber, 820 F.3d 958, 965 (8th Cir. 2016) (". . .we can assume that most individuals arrested on intoxication-related charges are not in obvious need of prompt medical care."); Meier v. Cnty. of Presque Isle, 376 F. App'x 524, 529 (6th Cir. 2010)("Meier's intoxication by itself — even at the extreme level indicated by the BAC — was insufficient to put Flewelling on notice that Meier needed medical attention."); Smith v. Pike Cnty., 338 F. App'x 481, 482 (6th Cir. 2009)("The evidence does not establish that jail officials were aware that Roberts had a sufficiently serious medical need or that they acted in conscious disregard by refusing medical care to Roberts. Although Roberts was clearly intoxicated, jail personnel had no indication that she was experiencing an overdose, and she did not appear to exhibit symptoms that would make it objectively clear that she had overdosed or was in immediate need of medical attention."); Border v. Trumbull Cnty. Bd. of Comm'rs, 414 F. App'x 831, 837–38 (6th Cir. 2011)("a pretrial detainee's generalized state of intoxication, without more, is insufficient to establish a serious medical need or an officer's deliberate indifference to a substantial risk of serious harm to a detainee."); Burnette v. Taylor, 533 F.3d 1325, 1332 (11th Cir. 2008)("Buster did not manifest signs of a serious medical need. His appearance, based on the facts established by Plaintiff, was

**DEFENDANT YVETTE BARBARI, RN'S REPLY TO PLAINTIFF'S OPPOSITION TO RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

consistent with some form of intoxication."); <u>Watkins v. City of Battle Creek</u>, 273 F.3d 682, 686 (6th Cir.2001) (affirming summary judgment for defendant officers and jailers where plaintiff denied swallowing drugs but was observed drooling a pink foamy substance, constantly licking his lips, falling out of a chair, grabbing his stomach, and "appeared to be drunk or high")[1]; <u>Estate of Hocker v. Walsh</u>, 22 F.3d 995, 1000 (10th Cir.1994)(affirming summary judgment for defendant officers and jailers where they did not seek medical treatment for plaintiff who was "obviously ... intoxicated or under the influence of drugs."); <u>Grayson v. Peed</u>, 195 F.3d 692, 696 (4th Cir. 1999)(drug intoxication symptoms are not a serious medical need.")[2]; <u>see also</u>, <u>Wichterman v. City of Philadelphia</u>, 2019 WL 3216609, at *12 (E.D. Pa. 2019)("Although an overdose is undoubtedly a serious medical condition, routine intoxication is not. [Citation] Routine intoxication is dealt with on a daily basis in the [Philadelphia jails] and is not the type of condition that typically leads to life-long handicap or permanent loss. Furthermore, it is not the type of condition for which 'a lay person would easily recognize the necessity for a doctor's attention.' ")(citations omitted); <u>McConville v. Montrym</u>, 2018 WL 4509494, at *4 (N.D.N.Y. 2018)("Decedent did not exhibit behavior or symptoms beyond some moderate level of intoxication that would reasonably alert any Defendant to the existence of a serious medical need requiring medical attention."); <u>Petersen v. Midgett</u>, 140 F.

---

[1] <u>See</u>, <u>Grote v. Kenton Cnty., Kentucky</u>, 85 F.4th 397, 409 (6th Cir. 2023)(retaining <u>Watkins</u> "serious medical need" requirement while making other refinements to the Fourteenth Amendment standard: "we are concerned with whether a defendant acts recklessly in the face of a serious medical need. . ..")

[2] <u>See</u>, <u>Short v. Hartman</u>, 87 F.4th 593, 612 (4th Cir. 2023)(retaining <u>Grayson</u> "serious medical need" requirement while making other refinements to the Fourteenth Amendment standard: "we first ask whether Ms. Short had an objectively serious medical condition.")

7
**DEFENDANT YVETTE BARBARI, RN'S REPLY TO PLAINTIFF'S OPPOSITION TO RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

Supp. 3d 490, 510 (E.D.N.C. 2015)(intoxication symptoms not a serious medical need: "to the extent Petersen claims his medical need was apparent and serious to Meads at booking, Petersen had 'no visible external injuries. He did not have trouble breathing. He was not bleeding, was not vomiting or choking, and was not having a seizure.' ")(citations omitted); <u>Est. of Lawson ex rel. Fink v. City of Hamilton</u>, 2009 WL 1444556, at *16 (S.D. Ohio 2009)("The facts clearly demonstrate that plaintiff had a serious medical need that manifested itself at some point during her pretrial detention. The undisputed facts do not permit a finding, however, that the need was objectively serious when Burkhardt and Heidorn were interacting with Lawson, <u>i.e.</u>, during her arrest and booking. The facts disclose that Lawson appeared to be intoxicated and under the influence of both alcohol and drugs at the time of her arrest and booking . . . .")(italics original); <u>Butler v. Coitsville Township Police</u>, 93 F.Supp.2d 862 (N.D. Ohio 2000)(detainee's slurred speech and unsteadiness during arrest did not make potential of alcohol seizure so obvious as to mandate medical attention; no deliberate indifference even though detainee later suffered alcohol seizure and fell, causing fatal head injury).

While it is undisputed that Plaintiff presented with two symptoms—unsteadiness on his feet and lack of verbal clarity -- there is no "clearly established" law requiring a nurse to send such a patient to a doctor. Even Plaintiff's expert agreed that with the information Nurse Barbari had, ***<u>including the fact that Plaintiff was not in a risk group for stroke and did not present with symptoms of a stroke,</u>*** a reasonably well trained nurse could conclude that there was ***<u>not</u>*** a high degree of risk Plaintiff would suffer from stroke if he did not receive a doctor's care at the time of the intake screening. (RT 12/11 – Venters Testimony, 273:8-274:3; Harrell Decl. Ex. "C").

/ / / /

**8**
**DEFENDANT YVETTE BARBARI, RN'S REPLY TO PLAINTIFF'S OPPOSITION TO RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

IV. **PLAINTIFF'S LEGAL CITATIONS ARE DISTINGUISHABLE**

Plaintiff's first case cite -- Russell v. Lumitap, 31 F.4th 729 (9th Cir. 2022) – merits little discussion. The case was decided on April 13, 2022 – eight months ***after*** the incident at issue in this case. For purposes of qualified immunity, post-incident cases are valueless in the "clearly established" law inquiry. See, e.g., City of Tahlequah, Oklahoma v. Bond, 595 U.S. 9, 13–14 (2021)(finding cited case "decided after the shooting at issue, is of no use in the clearly established inquiry.")(citations omitted).

Plaintiff's other case cites are factually distinguishable. For example, In Gibson, the court found "a common symptom of someone in a manic state is that they are combative and uncooperative. {Decedent] Gibson exhibited that symptom when the police brought him to the jail." Gibson v. Cnty. of Washoe, Nev., 290 F.3d 1175, 1189 (9th Cir. 2002), overruled by Castro v. Cnty. of Los Angeles, 833 F.3d 1060 (9th Cir. 2016). Given this symptomology, "County policy directed the jail's medical staff not to evaluate Gibson to determine if he had an urgent medical need" – and decedent thereafter expired after deputies "lock[ed] him in a cell, pepper spray[ed] him, shackl[ed] him for several hours by the hands, feet, and waist, dragg[ed] him through the corridor, and . . . two deputies climb[ed] on top of him." Id. at 1192.

This case involves different symptomology (for intoxication instead of for manic disorder) as well as an actual nursing assessment and no use of force. And Gibson otherwise says nothing about what the Constitution requires when, as here, a nurse confronts ***no*** symptomology or risk groups unique to stroke. See, Sharp v. County of Orange, 871 F.3d 901, 911 (9th Cir. 2017)(qualified immunity granted where "[o]ur case differs materially" from the facts in precedent cited by plaintiff.); id. ("Plaintiffs offer only one controlling case that they believe meets [the 'clearly established' law] standard, . . . but we reject it as too dissimilar on its facts.")

9
**DEFENDANT YVETTE BARBARI, RN'S REPLY TO PLAINTIFF'S OPPOSITION TO RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

The same goes for Gordon where the arrestee presented with vocal complaints of severe heroin addiction – not expressed alcohol consumption. See, Gordon v. Cnty. of Orange, 888 F.3d 1118, 1121 (9th Cir. 2018)("Gordon indicated [to the triage nurse] that he used '[h]eroin, by IV, at 3 grams a day.' "). In our case Porio (and the arresting officer) told the nurse the issue was alcohol – and Barbari addressed that very issue by referring Porio for medical observation.

Sandoval v. County of San Diego v. County of San Diego, 985 F.3d 657 (2021) is also off-point and valueless. Unlike here, the Sandoval nurse ***knew*** that the decedent was suffering from an unknown medical condition and was ***told*** to thoroughly re-evaluate the decedent due to his abnormal symptoms. Id. at 662. Given these (ignored) directives, the Sandoval court emphasized "that this is not a case where a nurse mistakenly misdiagnosed a patient after reasonably attempting to ascertain the cause of unexplained symptoms." Id. at 680.

By contrast, this case *is* a misdiagnosis case. Here, Nurse Barbari determined that Plaintiff was likely under the influence of alcohol rather than suffering a stroke, which is simply not Constitutionally actionable. See, Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's [Constitutional] rights."); Roberts v. Lessard, 841 F. App'x 691, 695 (5th Cir. 2021) ("our prior decisions suggest that an officer's failure to correctly diagnose a medical condition from ambiguous symptoms does not amount to deliberate indifference.")

The result does not change even if intoxication and stroke share two common symptoms (verbal and physical unsteadiness). Courts have held that there is no actionable deliberate indifference. See, e.g., Winger v. City of Garden Grove, 690 F. App'x 561, 563 (9th Cir. 2017) (no medical liability where arresting officers and jailers confuse "intoxication" for what actually happened to the arrestee (a stroke) and do not hospitalize her – "Winger's behavior was erratic but in a way that

was consistent with intoxication."); Estate of Allison v. Wansley, 524 F. App'x 963, 972 (5th Cir. 2013) (officers' actions were objectively reasonable where they believed an arrestees symptoms were consistent with pill intoxication and not alcohol intoxication and that she did not require medical attention); McWilliams v. City of Houston, 2022 WL 17337820 (5th Cir. 2022)(". . . jail personnel don't act with deliberate indifference when they place a visibly intoxicated detainee in a holding cell rather than take him to the hospital—provided that regular supervision occurs . . . . The conclusion is the same even where a detainee exhibits ambiguous symptoms."); Trevino v. Hinz, 751 F. App'x 551, 555 (5th Cir. 2018) ("[A]n officer's failure to immediately recognize ambiguous symptoms as a medical emergency does not amount to deliberate indifference."); Childress v. Harms, 449 F. App'x 758, 761-62 (10th Cir. 2011) (holding that prisoner failed to establish deliberate indifference claim where prisoner suffered a stroke, arrived at the jail with symptoms consistent with intoxication, and a nurse ruled out likelihood of a stroke based on a medical evaluation.)

## V. REASONABLE MISTAKES ARE PROTECTED BY QUALIFIED IMMUNITY

Qualified immunity shields an officer from liability even if his or her action resulted from "'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004)).

Nurse Barbari had no actionable medical notice that Plaintiff was suffering from a stroke rather than intoxication. Plaintiff's symptoms were consistent with intoxication, which is not a "serious medical need" for purposes of immunity. See e.g., Burnette v. Taylor, 5333 F.3d 1325, 1332 (11th Cir. 2008) ("Buster did not manifest signs of a serious medical need. His appearance, based on the facts established by Plaintiff, was consistent with some form of intoxication.")

11
**DEFENDANT YVETTE BARBARI, RN'S REPLY TO PLAINTIFF'S OPPOSITION TO RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

## VI. CONCLUSION

For all the foregoing reasons, Nurse Barbari respectfully requests that the Court grant Nurse Barbari qualified immunity.

Respectfully submitted,

DATED: January 20, 2025  **LYNBERG & WATKINS**

By: */s/ S. Frank Harrell*
**S. FRANK HARRELL
G. CRAIG SMITH**
Attorneys for Defendant,
YVETTE BARBARI, R.N.

# DECLARATION OF S. FRANK HARRELL

I, S. Frank Harrell, do state and declare as follows:

1. I am an attorney at law duly licensed to practice before all the courts of the State of California, and am a Partner in the law firm of Lynberg & Watkins, attorneys of record for Defendant Yvette Barbari, RN ("Nurse Barbari") in the above-captioned matter.

2. I have personal knowledge of the facts stated herein, except those stated upon information and belief, and as to those matters, I believe them to be true. If called upon to testify to the matters herein, I could and would competently do so. This Declaration is made in support of the foregoing Reply to Plaintiff's Opposition to Defendant Barbari's Rule 50(b) Renewed Motion for Judgment as a Matter of Law, set for hearing on January 21, 2025.

3. Attached hereto as **Exhibit 'A"** is a true and correct copy of the relevant excerpts of Yvette Barbari's testimony from the Reporter's Transcript from Trial Day 1, December 10, 2024.

4. Attached hereto as **Exhibit 'B'** is a true and correct copy of the relevant excerpts of Plaintiff Shawn Porio's testimony from the Reporter's Transcript from Trial Day 2, December 11, 2024.

5. Attached hereto as **Exhibit "C"** is a true and correct copy of the relevant excerpts of Dr. Homer D. Venters' testimony from the Reporter's Transcript from Trial Day 3, December 12, 2024.

6. Attached hereto as **Exhibit "D"** is a true and correct copy of the relevant excerpts of Dr. Chitra Venkatasubramanian's testimony from the Reporter's Transcript from Trial Day 1, December 10, 2024.

7. Attached hereto as **Exhibit "E"** is a true and correct copy of trial exhibit 83A – the comprehensive detox screening and receiving screening forms conducted by Nurse Barbari.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 20th day of January, 2025, at Orange, California.

By: */s/ S. Frank Harrell*
**S. Frank Harrell**
Declarant

14
**DEFENDANT YVETTE BARBARI, RN'S REPLY TO PLAINTIFF'S OPPOSITION TO RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

# **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Defendants certifies that the memorandum of points and authorities in support of this Reply contains 2,805 and does not exceed 10 pages, which complies with the Court's standing order, Local Rules 11-6.1 and 11-6.2.

DATED: January 20, 2025          Respectfully submitted,

**LYNBERG & WATKINS**

By: */s/ S. Frank Harrell*
**S. FRANK HARRELL**
**G. CRAIG SMITH**
Attorneys for Defendant
YVETTE BARBARI, R.N.